NEW ENGLAND ACCESSORIES
TRADE ASSOCIATION, INC., et
al., Plaintiffs, Appellants,

v.

James E. TIERNEY, et al.,
Defendants, Appellees.

No. 81–1886.

United States Court of Appeals,
First Circuit.

Submitted June 11, 1982.

Decided Sept. 28, 1982.

James M. Smith, Denver, on brief, for plaintiffs, appellants.

James E. Tierney, Atty. Gen., James W. Brannigan, Jr., Deputy Atty. Gen., and William R. Stokes, Asst. Atty. Gen., Augusta, Me., on brief, for defendants, appellees.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Challenged here is the facial validity of portions of the Maine Drug Paraphernalia Act, Me.Rev.Stat.Ann.tit. 17A, § 1111–A, an act patterned on the Drug Enforcement Administration's Model Drug Paraphernalia Act. The district court struck subsection 3(F) of the act, but concluded the act was otherwise facially valid. Plaintiffs, a trade association, wholesalers, and retailers subject to the act, have appealed. The Maine Act is set forth in the appendix to this opinion.

Plaintiffs, pointing to the definitional section (subsection 1 of the Maine Act) which does not expressly state whose intent is relevant in determining whether an item is drug paraphernalia, first argue that the statute exposes a defendant to criminal responsibility for the intent or misdeeds of

another. Interpreting a New Hampshire statute which contained a substantially identical definition of drug paraphernalia, see N.H.Rev.Stat.Ann.c. 318–B:1 X–a, we rejected a similar "transferred intent" argument concluding that a fair reading of the statute as a whole, including the portions defining the substantive offenses which focus on the mental state of the accused, indicated the intent referred to is that of the person alleged to have violated the statute. *See New England Accessories Trade Association, Inc. v. City of Nashua,* 679 F.2d 1, 5–6 (1st Cir. 1982) and cases cited therein. *See also Tobacco Accessories and Novelty Craftsmen Merchants Association of Louisiana v. Treen,* 681 F.2d 378, 383 (5th Cir. 1982) ("[t]he 'intended for use' language applies to the state of mind of the individual charged with the offense of selling, distributing, or displaying drug paraphernalia"); *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1219 (11th Cir. 1982) ("[t]o ensure that defendants will not be convicted based on the transferred intent of others . . . the . . . states of mind on which the definition of drug paraphernalia relies . . . require proof of general criminal intent of the accused"). It is true that unlike the situation in *City of Nashua,* we are not here aided by a state supreme court interpretation of the Maine statute, but that does not preclude us from ascertaining the meaning of the Maine statute.[1] It is also true that, unlike the New Hampshire statute, the substantive traf-

ficking offense of the Maine Act contains the "reasonably should know" language of the Model Act, compare N.H.Rev.Stat. Ann.c. 318–B:2 II with Me.Rev.Stat.Ann.tit. 17–A, § 1111–A 5, but this difference does not affect our determination that the definitional section itself, subsection 1 of the Maine Act, requires proof of the defendant's intent. *Accord, Levas and Levas v. Village of Antioch,* 684 F.2d 446, 452–53 (7th Cir. July 7, 1982); *Tobacco Accessories,* 681 F.2d at 383; *Florida Businessmen,* 673 F.2d at 1219; *Hejira Corp. v. MacFarland,* 660 F.2d 1356, 1366–1367 (10th Cir. 1981); *Casbah, Inc. v. Thone,* 651 F.2d 551, 559, 561 (8th Cir. 1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982) (No. 81–415); *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 928–929 (6th Cir. 1980), *vacated,* 451 U.S. 1013, 101 S.Ct. 2998, 68 L.Ed.2d 384 (1981); *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. 289, 292–293 (D.Del.1980).[2]

▪ Once the definitional section is so read, plaintiffs' further argument that subsection 5—which makes it "unlawful for any person to traffick in or furnish drug paraphernalia, knowing, *or under circumstances where one reasonably should know*" that it will be used for illegal drug purposes, Me.Rev.Stat.Ann.tit. 17–A, § 1111–A 5 (emphasis added)—permits conviction on a negligence standard looses its foundation. This is because in view of the definitional section—which, as interpreted, renders an

---

1. Plaintiffs argue that those federal courts which have read state statutory drug paraphernalia definitions patterned after the Model Act as referring to the intent of the accused who engaged in an impermissible process of placing a limiting construction on an act, a function a federal court has no authority to perform when reviewing a state statute. We disagree. It is the meaning of the Maine statute as written which both the district court and we have sought to ascertain through the use of traditional and appropriate canons of statutory interpretation. *See Casbah, Inc. v. Thone,* 651 F.2d 551, 557–558 (8th Cir. 1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982).

2. Courts reaching this result have relied on the general principle of statutory interpretation that statutes should be read to avoid an uncon-

stitutional result, *see, e.g., Record Revolution,* 638 F.2d at 928–929; *Delaware Accessories v. Gebelein,* 497 F.Supp. at 292; the structure of the Model Act—the initial ambiguity in § 1, viewed alone, being explained by the fact that it was drafted to be appropriate in the context of a number of different prohibited activities including possession (subsection 4 of the Maine Act), manufacturing or selling (subsection 5), and advertising (subsection 6), all of which substantive offenses focus on the mental state of the violator, *see, e.g., Casbah, Inc. v. Thone,* 651 F.2d at 559; *Delaware Accessories Trade Association v. Gebelein,* 497 F.Supp. at 292 and n.1; and the Model Act comments indicating the relevant intent for purposes of the definitional section is that of the defendant, *see, e.g., Delaware Accessories,* 497 F.Supp. at 293.

item in a seller's hands drug paraphernalia only if the seller intends it to be used with scheduled drugs—constructive knowledge of the buyer's purpose alone is not enough for conviction:

"In the context of an alleged sale or delivery of drug paraphernalia, the Act requires the state to prove both (1) that the defendant intended that an item would be used for the production or consumption of controlled substances and also (2) that he either knew, or that he acted in a set of circumstances from which a reasonable person would know, that the buyer of the item would thereafter use it for those purposes. So-called constructive knowledge thus has significance only in a situation where the defendant is selling or delivering items that he intends to be used to produce or consume illicit drugs in the first place. The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible ... for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue."

*Delaware Accessories,* 497 F.Supp. at 294. *See also Casbah, Inc. v. Thone,* 651 F.2d at 561 (following *Delaware Accessories*).

■ The foregoing is the interpretation of the act the Maine Attorney General advanced and the lower court adopted. *New England Accessories Trade Association v. Tierney,* 528 F.Supp. 404 (D.Me.1981). Plaintiffs nevertheless contend the statute is unconstitutionally vague because the standard of intent is itself so vague that it provides no guidance to actors or prosecutors. Plaintiffs claim merchants are unable to discern what mental state on their part— i.e., whether knowledge that an innocuous object may be used with scheduled drugs is enough—will transgress the act. Both "intentionally" and "knowingly" are defined in the Maine criminal code,[3] and we find these definitions sufficiently specific to avoid a due process vagueness problem. While plaintiffs argue that the facts listed in subsection 3 fail to provide black and white standards from which law enforcement officers can determine a merchant's intent, law enforcement always requires the exercise of some judgment, *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972), and the assessment called for under the Maine Act is no different in kind than that ordinarily encountered. *Delaware Accessories,* 497 F.Supp. at 295. In *New England Accessories,* 679 F.2d at 6, we rejected a similar attack leveled against a list containing 13 of the same 14 factors, and we adhere to that view.

■ Plaintiffs' last argument—that subsection 1(K) creates a mandatory presumption that the objects listed therein are drug paraphernalia—fails. The list gives examples of items which, depending on the circumstances—actual use or the accused's intent—may be drug paraphernalia.

*Affirmed.*

### APPENDIX

§ 1111–A. *Sale and use of drug paraphernalia*

1. As used in this section the term "drug paraphernalia" means all equipment, prod-

---

**3.** "1. 'Intentionally.'
"A. A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.
"B. A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes that they exist.
"2. 'Knowingly.'
"A. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.
"B. A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist."
Me.Rev.Stat.Ann.tit. 17–A, § 35.

ucts and materials of any kind which are used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a scheduled drug in violation of this chapter or Title 22, section 2383. It includes, but is not limited to:

A. Kits used or intended for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a scheduled drug or from which a scheduled drug can be derived;

B. Kits used or intended for use in manufacturing, compounding, converting, producing, processing or preparing scheduled drugs;

C. Isomerization devices used or intended for use in increasing the potency of any species of plant which is a scheduled drug;

D. Testing equipment used or intended for use in identifying or in analyzing the strength, effectiveness or purity of scheduled drugs;

E. Scales and balances used or intended for use in weighing or measuring scheduled drugs;

F. Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used or intended for use in cutting scheduled drugs;

G. Separation gins and sifters, used or intended for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

H. Blenders, bowls, containers, spoons and mixing devices used or intended for use in compounding scheduled drugs;

I. Capsules, balloons, envelopes and other containers used, or intended for use in packaging small quantities of scheduled drugs;

J. Containers and other objects used or intended for use in storing or concealing scheduled drugs; and

K. Objects used or intended for [sic] in ingesting, inhaling or otherwise introduc-

ing marijuana, cocaine, hashish or hashish oil into the human body, such as:

(1) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls;

(2) Water pipes;

(3) Carburetion tubes and devices;

(4) Smoking and carburetion masks;

(5) Roach clips, meaning objects used to hold burning material, such as a marijuana cigarette that has become too small or too short to be held in the hand;

(6) Miniature cocaine spoons and cocaine vials;

(7) Chamber pipes;

(8) Carburetor pipes;

(9) Electric pipes;

(10) Air-driven pipes;

(11) Chillums;

(12) Bongs; or

(13) Ice pipes or chillers.

2. For purposes of this section, drug paraphernalia does not include hypodermic apparatus. Possession of, furnishing or trafficking in hypodermic apparatus constitute separate offenses under sections 1110 and 1111.

3. In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

A. Statements by an owner or by anyone in control of the object concerning its use;

B. Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any scheduled drug;

C. The proximity of the object, in time and space, to a direct violation of this chapter;

D. The proximity of the object to scheduled drugs;

E. The existence of any residue of scheduled drugs on the object;

F. Direct or circumstantial evidence of the intent of an owner, or of anyone in

control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use as drug paraphernalia;

G. Instructions, oral or written, provided with the object concerning its use;

H. Descriptive materials accompanying the object which explain or depict its use;

I. National and local advertising concerning its use;

J. The manner in which the object is displayed for sale;

K. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

L. Direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

M. The existence and scope of legitimate uses for the object in the community; and

N. Expert testimony concerning its use.

4. It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of this chapter or Title 22, section 2383.

5. It is unlawful for any person to traffick in or furnish drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a scheduled drug in violation of this chapter or Title 22, section 2383.

6. It is unlawful for any person to place in any newspaper, magazine, handbill or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects intended for use as drug paraphernalia.

7. Violation of subsection 4 is a civil violation for which a forfeiture of not more than $200 may be adjudged.

8. Violation of subsection 5 or 6 is a Class E crime, except that, if the actor trafficks or furnishes drug paraphernalia to a child under 16 years of age, it is a Class D crime.

9. Any drug paraphernalia possessed in violation of this section is declared to be contraband and may be seized and confiscated by the State.