PENNSYLVANIA ACCESSORIES TRADE ASSOCIATION, INC.; Lazy J, Ltd., A Pennsylvania Corporation; Quickdraw Accessories, Inc., a Pennsylvania Corporation; Record Outlet; Merchandising Service of America, Inc., A Pennsylvania Corporation; U.B.C. Grain Company, Inc., A Pennsylvania Corporation; David A. Talmas, Individually and as a director of the Pennsylvania Accessories Trade Association, Inc.; James A. Bauer, Individually and as a director of the Pennsylvania Accessories Trade Association, Inc.; Lenwood Stephens, Individually and as a director of the Pennsylvania Accessories Trade Association, Inc.; Martin Paul Millmond, Individually and as a director of the Pennsylvania Accessories Trade Association, Inc.; and Wayne A. Deakin, Individually and as a director of the Pennsylvania Accessories Trade Association, Inc., Plaintiffs,

v.

Richard THORNBURGH, Governor of the Commonwealth of Pennsylvania and LeRoy S. Zimmerman, Attorney General of the Commonwealth of Pennsylvania, Defendants.

Civ. A. No. 81–0126.

United States District Court,
M.D. Pennsylvania.

June 22, 1983.

**1570**

Joseph M. Devecka, Robert C. Rayman, Devecka & Rayman, State College, Pa., Leonard I. Sharon, Sharon & Sharon, Pittsburgh, Pa., for plaintiffs.

Marybeth Stanton, Mary Ellen Krober, Deputy Attys. Gen., Harrisburg, Pa., for defendants.

## OPINION

HERMAN, District Judge.

## I. INTRODUCTION AND BACKGROUND

Drug paraphernalia statutes and ordinances are a response to the development of an extensive multi-million dollar industry that promotes and glamorizes the illegal use of drugs through the manufacture and sale of implements for preparing and using illicit drugs, primarily marijuana and cocaine. *See* Hearings Before the House Select Comm. on Narcotics Abuse And Control, 96th Cong., 1st Sess. (November 1, 1979) (statement of Dep. Ass't. Atty. Gen'l. Irvin B. Nathan). *See also Levas and Levas v. Village of Antioch,* 684 F.2d 446, 449 (7th Cir.1982); *Tobacco Accessories & Novelty Craftsmen Assoc. v. Treen,* 681 F.2d 378, 380 (5th Cir.1982). The Model Drug Paraphernalia Act (hereinafter referred to as "The Model Act"), drafted by the Drug Enforcement Administration of the United States Department of Justice at the request of the Drug Policy Office of the President's Domestic Policy Council, *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 919 (6th Cir.1980), *vacated and remanded,* 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982), represents an attempt to write a statute that would be broad enough to deal with the problem effectively, but which would avoid the constitutional infirmities that resulted in successful challenges to various state and local drug paraphernalia laws. *Stoianoff v. Montana,* 695 F.2d 1214, 1217 (9th Cir.1983); *Levas,* 684 F.2d at 449; *Tobacco Accessories,* 681 F.2d at 380 & n. 3; *Casbah, Inc. v. Thone,* 651 F.2d 551, 555 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982). Pennsylvania's Drug Paraphernalia Act of December 4, 1980, P.L. 634, No. 186, *codified at* 35 P.S. §§ 780–102(b), 780–113(a)(32)–(34), & 780–113(i) (Purdon Supp.1983) (hereinafter referred to as "Act 186") adopts verbatim the language of the Model Act. *See* Appendix.

Act 186 was to become effective as an amendment to Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–101, *et seq.,* on February 2, 1981. Prior to the effective date, on January 26, 1981, Plaintiffs[1] filed this action attacking the statute as facially unconstitutional. After a hearing on January 30, 1981, this court granted Plaintiffs' application for a temporary restraining order. A hearing on Plaintiffs' request for a preliminary injunction was held on February 18, 1981. On February 27, 1981, we enjoined Defendants Richard Thornburgh[2] and LeRoy Zimmerman[3] from enforcing Act 186 until a decision could be rendered on the merits of Plaintiffs' constitutional chal-

---

1. There are eleven plaintiffs in this action. They may be classified into three groups. The organizational plaintiff, Pennsylvania Accessories Trade Association (hereinafter referred to as "PATA"), is a trade association of enterprises that sell or manufacture items that are or may be drug paraphernalia. The commercial plaintiffs consist of five enterprises that are PATA members. They are Lazy J, Ltd., Quickdraw Accessories, Inc., Record Outlet, Merchandising Services of America, Inc., and U.B.C. Grain Co. The five individual plaintiffs,

David Talmas, James Bauer, Lenwood Stephens, Martin Millmond and Wayne Deakin, are members of the PATA Board of Directors.

2. Richard Thornburgh is Governor of the Commonwealth of Pennsylvania; he has held that office from the time that Act 186 was introduced until the present.

3. LeRoy Zimmerman was elected the State's Attorney General in November of 1980. He was sworn into office in January of 1981.

lenge. The Parties then proceeded to conduct discovery.

On March 3, 1982, the United States Supreme Court handed down its unanimous decision in *Village Of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Although the ordinance in *Flipside* was not patterned after the Model Act, the lower courts have considered pre-enforcement, facial challenges to versions of the Model Act in light of the analytical framework set forth in *Flipside. But see* B. Gerson, "Head Shops: A Legal Haze," Nat'l L.J. at 8 (Aug. 23, 1982) (*Flipside* provides little guidance). To date, nine circuit courts have upheld statutes based on the Model Act. In seven of the circuits the cases were decided after the Supreme Court rendered its decision in *Flipside.*[4] Consequently, on November 2, 1982, Defendants moved for summary judgment on the basis that Plaintiffs' facial challenge involves only the legal question of whether or not Act 186 conflicts with the United States Constitution, which question Defendants assert should be resolved in their favor. Supporting and opposing memoranda were duly filed. We held oral argument on March 28, 1983. After careful review of the extensive case law in this area, the briefs and arguments of counsel, we now grant Defendants' motion for summary judgment for the reasons set forth below.

## II. DISCUSSION

### A. Overbreadth and Vagueness

The Supreme Court in *Flipside* enunciated the following analysis to be used in resolving facial challenges to the overbreadth and vagueness of a law:

> a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

455 U.S. at 494–95, 102 S.Ct. at 1191. The Supreme Court also noted that in evaluating a state law a federal court must consider any limiting construction that a state court or enforcement agency has proffered. *Id.* at 494 n. 5, 102 S.Ct. at 1191 n. 5.

We will follow this scheme in our examination of Act 186. The volume of recent case law in which versions of the Model Act have been subjected to scrutiny for overbreadth and vagueness, and upheld,[5] makes our task an easier one. We will not repeat the analysis, therefore, with the same depth of detail that appears in other discussions. We will, however, attempt to highlight those areas in which Plaintiffs claim this case is distinguishable from decisions ad-

---

**4.** *See Stoianoff v. Montana,* 695 F.2d 1214 (9th Cir.1983); *Weiler v. Carpenter,* 695 F.2d 1348 (10th Cir.1982); *Kansas Retail Trade Co-Op v. Stephen,* 695 F.2d 1343 (10th Cir.1982); *The General Stores, Inc. v. Bingaman,* 695 F.2d 502 (10th Cir.1982); *New England Accessories Trade Assoc. v. Tierney,* 691 F.2d 35 (1st Cir. 1982); *Levas & Levas, Inc. v. Village of Antioch,* 684 F.2d 446 (7th Cir.1982); *Tobacco Accessories & Novelty Craftsmen Assoc. v. Treen,* 681 F.2d 378 (5th Cir.1982); *New England Accessories Trade Assoc. v. City of Nashua,* 679 F.2d 1 (1st Cir.1982); *Florida Businessmen For Free Enterprise v. City of Hollywood,* 673 F.2d 1213 (11th Cir.1982); *National Organization For The Reform Of Marijuana Laws v. Kloch,* 691 F.2d 495 (4th Cir.1982) (per curiam).

*Casbah, Inc. v. Thone,* 651 F.2d 551 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982), and *Brache v. County of West Chester,* 658 F.2d 47 (2d Cir. 1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982), were decided before the Supreme Court issued its opinion in *Flipside.* The Tenth Circuit also upheld a drug paraphernalia statute based on the Model Act before *Flipside, Hejira Corp. v. MacFarlane,* 660 F.2d 1356 (10th Cir.1981), in addition to the cases it decided after *Flipside: Weiler, Kansas Retail Trade Co-Op.,* and *General Stores, supra.*

**5.** *See* note 4 *supra.*

verse to their position by the various appellate courts.

### 1. Overbreadth

■ In considering an overbreadth challenge to a statute, the concern is not with a law's uncertainty, but with its potential for punishing constitutionally protected conduct. "A law is facially overbroad if it does not aim specifically at evils within the allowable area of [government] control, but . . . sweeps within its ambit other activities that constitute an exercise of constitutionally protected rights." *Tobacco Accessories & Novelty Craftsmen Assoc. v. Treen,* 681 F.2d 378, 382 (5th Cir.1982), *quoting Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940). The concepts of vagueness and overbreadth are interrelated, however. The Supreme Court has recognized that ambiguous meanings cause citizens to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1322, 12 L.Ed.2d 377 (1964), *quoting Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). Thus, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment to determine if it is overbroad. *Flipside,* 455 U.S. at 494 n. 6, 102 S.Ct. at 1191 n. 6.

■ Plaintiffs in this case complain that Act 186 is overbroad because it inhibits speech encouraging change in the marijuana laws. They point to the provision in the definition of drug paraphernalia in which the court and law enforcement officials are directed to consider the following factors as circumstantial evidence that an item is drug paraphernalia:

> statements by an owner or by anyone in control of the object concerning its use . . . descriptive materials accompanying the object which explain or depict its use . . . the manner in which the object is displayed for sale . . . expert testimony concerning its use.

35 P.S. § 780–102(b). We fail to see the relationship between "statements," "descriptive materials," or "expert testimony" concerning an object's *use* and expressions of disagreement with the current drug laws. The only factor that might possibly implicate such expressions would be "the manner in which the object is displayed for sale." The context in which the phrase appears, however, indicates that it was intended to apply to display relating to the *use* of the object, and not to display in proximity to expressive materials legitimately encouraging the legalization of marijuana. Moreover, this provision does not, by its terms, directly prohibit or otherwise regulate literature advocating change in the drug laws. A statute that imposes *indirect* restrictions on speech is not unconstitutionally overbroad unless there is a *substantial* potential for its application to protected speech. The fact that some unconstitutional applications of the law can be imagined is insufficient to invalidate the statute on overbreadth grounds. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). *See also Flipside,* 455 U.S. at 496, 102 S.Ct. at 1192; *The General Stores, Inc. v. Bingaman,* 695 F.2d 502, 504 (10th Cir.1982).

Plaintiffs also argue that consideration by the police of "descriptive materials which explain or depict its [the object's] use" or "the manner in which the object is displayed" will inhibit symbolic speech. Plaintiffs contend that they will be forced to refrain from making symbolic statements in support of repealing the marijuana laws through the sale or manufacture of items bearing drug-related designs, logos or slogans. The Supreme Court addressed this argument in *Flipside* and rejected it:

> Although drug-related designs or names on cigarette papers may subject those items to regulation, the village does not restrict speech as such, but simply regulates the commercial marketing of items that the labels reveal may be used for an illicit purpose. The scope of the ordinance therefore does not embrace noncommercial speech.

*Flipside,* 455 U.S. at 496, 102 S.Ct. at 1192. Commercial speech is entitled to First Amendment protection, *Virginia Board of Pharmacy v. Virginia Citizens Consumer Counsel,* 425 U.S. 748, 761–62, 96 S.Ct. 1817,

1825, 48 L.Ed.2d 346 (1976), but commercial speech does not trigger as high a level of judicial scrutiny as other varieties of expression. *Ohralik v. Ohio State Bar Assoc.,* 436 U.S. 447, 456 & 457, 98 S.Ct. 1912, 1918 & 1919, 56 L.Ed.2d 444 (1978). In *Flipside,* the Supreme Court summarily dismissed the commercial speech interests of the plaintiff retailer:[6]

> [I]nsofar as any *commercial* speech interest is implicated here, it is only the attenuated interest in displaying and marketing merchandise in the manner that the retailer desires. We doubt that the village's restriction on the manner of marketing appreciably limits Flipside's communication of information—with one obvious and telling exception. The ordinance is expressly directed at commercial activity promoting or encouraging illegal drug use. If that activity is deemed "speech," then it is speech proposing an illegal transaction which a government may regulate or ban entirely.

*Flipside,* 455 U.S. at 496, 102 S.Ct. at 1192 (citations omitted).

■ We see no reason why the same analysis should not apply in this case, and equally as well to the manufacturing plaintiffs as to the retailer plaintiffs. Furthermore, even if we were to treat the sale and manufacture of items bearing drug-related designs as noncommercial speech, it would constitute symbolic speech, that is, speech mixed with conduct. When speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968) (draft card burning). The regulation of drug paraphernalia furthers the important state interest in discouraging the un-

authorized use of addictive drugs and other substances determined to be deleterious to the health and well-being of its citizens. The regulation is not directed at the suppression of free expression, and the effect on the expression of ideas is minimal. *Id.* at 377, 88 S.Ct. at 1679. *See also The General Stores, Inc. v. Bingaman,* 695 F.2d 502, 504 (10th Cir.1982).

Section 2 of Act 186, in contrast, *directly* restricts speech by prohibiting

> The placing in any newspaper, magazine, handbill or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement in whole or in part is to promote the sale of objects designed or intended for use as drug paraphernalia.

35 P.S. § 780–113(a)(34). Plaintiffs have not specifically challenged the advertising ban in their brief opposing summary judgment, but in Paragraph 27 of their Complaint they allege that "[t]he challenged Act has a chilling effect on the free expression of the Plaintiffs in that the Plaintiffs are unable to determine, based on the guidelines in the Act, what statements in their advertising materials are prohibited."[7]

Since the ordinance attacked in *Flipside* did not contain an advertising ban, we do not have the guidance of the Supreme Court on this issue. A number of circuit courts, however, have addressed the question. *See Kansas Retail Trade Co-Op v. Stephen,* 695 F.2d 1343, 1347 (10th Cir. 1982); *New England Accessories Trade Assoc. v. City of Nashua,* 679 F.2d 1, 3–5 (1st Cir.1982); *Florida Businessmen For Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1217 (11th Cir.1982); *Casbah, Inc. v. Thone,* 651 F.2d 551, 563–64 (8th Cir.1981), *cert. denied,* 445 U.S. 1005, 102 S.Ct. 1642,

---

**6.** Plaintiffs have maintained that the instant case is distinguishable because they are asserting their *own* first amendment rights, and not merely those of others not before the court. It is clear from this passage in *Flipside* that the Supreme Court dealt with the plaintiff's own rights in analyzing the first amendment claim in that case.

**7.** In essence, Plaintiffs argue that the ambiguity, or vagueness, of the statute causes it to reach constitutionally protected conduct. This contention is an appropriate overbreadth argument. *See* our discussion at 1572 *supra. See also Record Head Corporation v. Sachan,* 682 F.2d 672, 674 (7th Cir.1982) (when constitutionally protected rights are threatened vagueness and overbreadth analyses are cognate).

71 L.Ed.2d 874 (1982); *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 936–37 (6th Cir.1980), *vacated and remanded,* 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982). With the exception of the *Record Revolution* case, the advertising provision passed constitutional muster in each instance.

A careful reading of the provision reveals that, like the factors listed in the definitional section, this prohibition is directed only at commercial speech. It forbids "*advertisement*[s]" that "promote the *sale* of objects designed or intended for use as drug paraphernalia." (emphasis added). By its terms, the statute does not address advertisements glorifying the drug culture or advocating reform of the drug laws, without an invitation to purchase proscribed items. *Florida Businessmen,* 673 F.2d at 1217; *Casbah,* 651 F.2d at 563. *But see*

*Record Revolution,* 638 F.2d at 937. Thus, the forbidden speech is commercial speech proposing an illegal transaction. Such speech is not protected by the First Amendment. *Central Hudson Gas and Electric Corp. v. Public Service Commission,* 447 U.S. 557, 564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980).[8]

### 2. Vagueness

■ The analytical framework established by the Supreme Court in *Flipside* dictates that after consideration of the overbreadth challenge, "[t]he court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct,[9] should uphold the challenge only if the enactment is impermissibly vague in all of its applications.... A court should ... examine the complainant's conduct before an-

**8.** Some courts have expressed concern that the language "in whole or in part" may be used to suppress speech urging reform of drug laws or espousing the drug culture. *New England Accessories Trade Assoc. v. City of Nashua,* 679 F.2d 1, 4 (1st Cir.1982); *Record Revolution,* 638 F.2d at 937. While a federal court may not remedy a defective state statute by supplying a limiting construction, *Id.* at 926, the court may employ traditional tools of statutory interpretation to "extrapolate its allowable meaning." *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972), *quoted in Casbah,* 651 F.2d at 558. *See also New England Accessories Trade Assoc. v. Tierney,* 691 F.2d 35, 36 & nn. 1 & 2 (1st Cir.1982).

In this case, not only is the Act literally couched in terms of speech proposing a commercial transaction, but the comments to the Model Act also indicate that the provision was not meant to reach protected non-commercial speech:

> Printed matter criticising the drug laws, glorifying the drug culture, glamorizing the use of drugs, or providing information or instructions on illicit drugs is not affected. The target of this Section is commercial advertising.

"Comment [Article II], Model Drug Paraphernalia Act," Hearings Before the House Select Comm. on Narcotics Abuse and Control, 96th Cong., 1st Sess. (Nov. 1, 1979), at 94.

Certainly, when the Pennsylvania legislature adopted the Model Act verbatim, our reading of the statute to exclude restriction of constitutionally guaranteed expression is the appropriate and "allowable" interpretation. *See also Casbah,* 651 F.2d at 558 & 564 (constitutional

interpretation favored). *Accord New England Accessories Trade Assoc. v. Tierney,* 691 F.2d 35, 36 n. 2 (1st Cir.1982).

**9.** Plaintiffs contend that the statute violates their Fourth Amendment rights by permitting unreasonable searches and seizures. Plaintiffs are apparently urging that Act 186 thereby implicates constitutionally protected conduct, triggering a stricter vagueness analysis. *See Flipside,* 455 U.S. at 495, 102 S.Ct. at 1192 ("assuming the enactment implicates no constitutionally protected conduct"). We do not think that Plaintiffs have properly interpreted the Supreme Court's comments in *Flipside.* The challenged statute must not, by virtue of its vagueness, infringe upon the exercise of constitutional rights, such as freedom of speech, *see Flipside,* 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (regarding vagueness challenges to statutes which do not involve First Amendment freedoms); *See also Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974) (greater specificity required when statute reaches First Amendment expressions), but in the pre-enforcement context the question of whether the statute allows unreasonable searches and arrests in violation of the Fourth Amendment and the due process clause is an integral part of the traditional vagueness analysis. *See Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 ("if arbitrary and discriminatory enforcement is to be prevented"). We will not, therefore, consider Plaintiffs' Fourth Amendment argument as an issue separate from the vagueness challenge.

alyzing other hypothetical applications of the law." *Flipside,* 455 U.S. at 494–95, 102 S.Ct. at 1191–1192. Defendants have not urged that particular conduct of Plaintiffs is clearly proscribed by Act 186.[10] Consequently, we must proceed directly to the test for facial vagueness.

In *Flipside,* the Court applied the standards enunciated in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Id.* at 108, 92 S.Ct. at 2298 (footnotes omitted).

In regard to the first prong of the vagueness test, the "notice" prong, Plaintiffs allege in a general fashion that they are unable to understand the definition of "drug paraphernalia" contained in Act 186. *See* Complaint, ¶¶ 19–24. The definition in the Act is tri-partite. First, drug paraphernalia is generally defined as "all equipment, products and materials of any kind which are used, intended for use or designed for use..." with a controlled substance. Second, it enumerates twelve groups of items as examples of drug paraphernalia. Last, the definition specifies thirteen factors that should be considered when determining whether an item is to be considered drug paraphernalia. *See* 35 P.S. § 780–102(b). In Section 2 of the Act, the statute bans the use of, possession with intent to use, delivery of, possession with intent to deliver, or manufacture with intent to deliver drug paraphernalia,[11] as defined in Section 1.

Facial vagueness occurs when a law contains *no* core meaning that can be reasonably understood by the person of ordinary intelligence. *Brache v. County of Westchester,* 658 F.2d 47, 50–51 (2d Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1643, 71 L.Ed.2d 874 (1982). "A finding of unconstitutional vagueness cannot be based on uncertainty at the margins, or on a parade of bizarre hypothetical cases: problems of that order can be resolved in challenges as applied." *Levas and Levas v. Village of Antioch,* 684 F.2d 446, 451 (7th Cir.1982) (citations omitted). Act 186 is not a model of precision, and we acknowledge some difficulties with portions of the law, but a fair reading of the statute as a whole reveals a core of clearly prohibited conduct. The Act makes criminal (1) the use of tangible items of any kind with prohibited drugs; (2) the delivery of items, whether or not they have other lawful uses, with the intent that they will be used with prohibited drugs; and (3) the manufacture of items for use with prohibited drugs. The Plaintiffs do not complain that they do not have notice of the proscribed "controlled substances." They

---

**10.** It is true, as Plaintiffs assert, that *Flipside* was decided adversely to the business in that case because at least some of the items sold by the store were clearly covered by the ordinance. Nevertheless, the fact that the Supreme Court's advice against upholding the vagueness challenge unless "the enactment is impermissibly vague in all of its applications" appears in dictum, *Flipside,* 455 U.S. at 495, 102 S.Ct. at 1192, does not vitiate its precedential value here. The language in *Flipside* was consistent with prior holdings of the Court. A complainant must prove that the enactment is vague "not in the sense that it requires a per-

son to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971), *quoted in Flipside,* 455 U.S. at 495, at n. 7, 102 S.Ct. at 1191 at n. 7; *See also United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975) (vague law "proscribed no comprehensible course of conduct at all").

**11.** In addition, Section 2 includes an advertising ban, as previously discussed.

are enumerated elsewhere in Pennsylvania's Controlled Substance, Drug Device and Cosmetic Act. *See* 35 P.S. § 780–104. The Act includes a specific intent requirement, *Cf. New England Accessories Trade Assoc. v. City of Nashua,* 679 F.2d 1, 7 (1st Cir. 1982) (ordinance did not require proof of specific intent), to differentiate innocent transfers of multi-purpose items from illegal transfers of drug paraphernalia,[12] and the list of examples, while not exhaustive, gives some substance to the term "drug paraphernalia." *Levas and Levas v. Village of Antioch,* 684 F.2d 446, 452 (7th Cir.1982).

Nevertheless, Plaintiffs object that they cannot determine "whose 'intent' is at issue in relation to the definition of paraphernalia." Complaint, ¶ 26. They fear prosecution based on the "transferred intent" of another person.[13] Each of the substantive criminal offenses described in Section 2, however, incorporates the definition of drug paraphernalia. An item is not drug paraphernalia unless it is "used, intended for use or designed for use" with controlled substances. Therefore, an individual cannot commit one of the offenses described in Section 2, unless he possesses the pertinent mental state. As a general principle of criminal law the "mens rea" must be that of the criminal defendant. The only rea-

sonable and logical conclusion—and the one supported by the comments to the Model Act, which refer to the potential defendant as the "person in control" of the item, "Comment [Article I], Model Drug Paraphernalia Act," Hearings Before the House Select Comm. on Narcotics Abuse and Control, 96th Cong., 1st Sess. (Nov. 1, 1979), at 91–92,—is that the Act permits a person to be arrested, prosecuted or convicted only for that person's own use, intent or design.[14] *See Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 928–29 & n. 14 (6th Cir.1980). Not only has this construction been accepted by the circuit courts that have considered the issue, *see, e.g., Stoianoff v. Montana,* 695 F.2d 1214, 1220 (9th Cir.1983); *General Stores, Inc. v. Bingaman,* 695 F.2d 502, 504 (10th Cir.1982); *New England·Accessories Trade Assoc. v. Tierney,* 691 F.2d 35, 36 & n. 2 (1st Cir. 1982); *Tobacco Accessories & Novelty Craftsmen Assoc. v. Treen,* 681 F.2d 378, 383 (5th Cir.1982); *New England Accessories Trade Assoc. v. City of Nashua,* 679 F.2d 1, 5–6 (1st Cir.1982); *Florida Businessmen For Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1218–19 (11th Cir. 1982); *Casbah, Inc. v. Thone,* 651 F.2d 551, 559 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982);

---

**12.** As the Supreme Court observed in *Flipside,* the plain meaning of "designed for use" refers to the objective features of the items as a manifestation of the *intent* of the manufacturer. 455 U.S. 489, 501, 102 S.Ct. 1186, 1194, 71 L.Ed.2d 362. This language, therefore, addresses the manufacture of items whose sole or dominant purpose is for use with illicit drugs, and not multi-purpose items adapted for drug use at some later time by someone other than the manufacturer. "A business person of ordinary intelligence would understand that this term ["designed for use"] refers to the design of the manufacturer, not the intent of the retailer or customer." *Id. See also Tobacco Accessories & Novelty Craftsmen Assoc. v. Treen,* 681 F.2d 378, 385 & n. 15 (5th Cir.1982) (interpretation supported by comments to Model Act).

Plaintiffs also argue that the "designed for use" language is vague because it gives no notice of what physical characteristics render an object designed for use with drugs. It is clear from the foregoing discussion that items suitable principally for lawful purposes, such

as ordinary pipes, vials and spoons, are not "designed for use" with illegal drugs. *Flipside,* 455 U.S. at 501, 102 S.Ct. at 1194. We do not think it necessary, or indeed possible, for the statute to specify the myriad characteristics that might be employed in fashioning an object for illicit drug use, particularly when selection of those features depends upon the *intentional* action of the manufacturer in the creative process. "[M]ost statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions." *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952).

**13.** An extreme, but highly illustrative, example of transferred intent would be the conviction of an innocent seller of a garden hose because the buyer intended to use the hose to water a garden of marijuana plants. *Stoianoff v. Montana,* 695 F.2d 1214, 1220 (9th Cir.1983).

**14.** *See also* note 12 *supra.*

*Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 928–29 & n. 14 (6th Cir.1980) *vacated and remanded,* 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982), but it may also be the interpretation required by Pennsylvania law, *see Commonwealth v. Wilson,* 449 Pa. 235, 238, 296 A.2d 719, 721 (1972) (defendant may only be convicted for acts of another if there is liability based upon shared criminal intent); *Commonwealth v. Teada,* 235 Pa.Super.Ct. 438, 444, 344 A.2d 682, 684–85 (1975) (if inconsistent interpretations of statute are both reasonable, benefit of doubt inures to defendant); 1 Pa.C.S.A. § 1928(b)(1) (penal statutes strictly construed), as Plaintiffs themselves have persuasively argued. *See* Brief Opposing Defendants' Motion for Summary Judgment, at 10–12.

Plaintiffs also argue that the specific intent requirement does not "cure" the vagueness of the Act. *See Flipside,* 455 U.S. at 499, 102 S.Ct. at 1194 (scienter requirement may mitigate vagueness). They contend that "it is impossible for one to intend to violate a law when he cannot understand the meaning of the law." *Lazy J, Et Al. v. Borough of State College,* Civ. No. 80–1167 (M.D.Pa.1981), slip op. at 7. Under the traditional definition of scienter, the knowing performance of an act with an intent to bring about certain results, knowledge of the fact that deliberately causing such results is proscribed is immaterial. *Id.* n. 7; *Levas and Levas v. Village of Antioch,* 684 F.2d 446, 453 (7th Cir.1982). This type of scienter, it is true, provides no clarification to a vague law. As the court in *Levas* pointed out, the scienter requirement in statutes patterned after the Model Act goes further:

Here the scienter requirement is not simply a circular reiteration of the offense— an intent . . . [to manufacture, distribute or possess] something that may be classifiable as drug paraphernalia. Rather the scienter requirement determines what *is* classifiable as drug paraphernalia: the violator must design the item for drug use, intend it for drug use, or actually employ it for drug use. Since very few of the items a paraphernalia ordinance seeks to reach are single-purpose items, scienter is the only practical way of defining when a multi-purpose object becomes paraphernalia. So long as a violation of the ordinance cannot be made out on the basis of someone other than the violator's knowledge, or on the basis of knowledge the violator ought to have had but did not,[15] this sort of intent will suffice to distinguish "the paper clip which holds the pages of this memorandum of opinion from an identical clip which is used to hold a marijuana cigarette." *Record Revolution No. 6, Inc. v. City of Parma, supra,* 492 F.Supp. 1157, 1166.

*Levas,* 684 F.2d at 453. Moreover, as the Plaintiffs acknowledge, every circuit case after *Flipside* has accepted the specific intent element in Model Act legislation as sufficient to cure notice vagueness.

Turning to the second prong of the vagueness test, the question of enforcement standards, Plaintiffs charge that the definition of drug paraphernalia is so vague that it leaves the determination of whether or not an object is drug paraphernalia to the subjective, *ad hoc* judgment of the police. Several courts have construed *Flipside* as teaching that a claimant may not raise the

---

**15.** In *Levas,* the language "should reasonably have known" was excised from the ordinance as permitting conviction based on an impermissibly vague negligence standard. *See also Tobacco Accessories & Novelty Craftsmen Assoc. v. Treen,* 681 F.2d 378, 385 (5th Cir.1982); *New England Accessories Trade Assoc. v. City of Nashua,* 679 F.2d 1, 7 (1st Cir.1982); *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 935–36 (6th Cir.1980). Other courts have recognized, however, that because the definition of drug paraphernalia in the Model Act is incorporated into the proscriptive sections, the state must first prove that the de-

fendant intended an item for use with drugs before it reaches the question of whether he knew or reasonably should have known that the buyer of the item would thereafter use it for illegal purposes. *See Stoianoff v. Montana,* 695 F.2d 1214, 1221 (9th Cir.1983); *New England Accessories Trade Assoc. v. Tierney,* 691 F.2d 35, 37 (1st Cir.1982); *Casbah, Inc. v. Thone,* 651 F.2d 551, 561 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982). Thus, Act 186 does not allow prosecution "on the basis of knowledge the violator ought to have had but did not." *Levas,* 684 F.2d at 453.

danger of arbitrary and discriminatory enforcement in a pre-enforcement challenge, but must wait until the law has been enforced against him. *Stoianoff v. Montana,* 695 F.2d 1214, 1222 (9th Cir.1983); *Florida Businessmen For Free Enterprise v. City of Hollywood,* 673 F.2d 1213, 1220 (11th Cir. 1982); *High Ol' Times v. Busbee,* 673 F.2d 1225, 1231 (11th Cir.1982). The court in *Record Head Corp. v. Sachen,* however, distinguished the possibility of isolated cases of unjust enforcement, which are more appropriately considered in "as-applied" post-enforcement challenges, from the potential for enforcement solely at the discretion of the arresting or prosecuting authorities because the statute provides no guidance as to what the prohibited offense is. *Record Head Corp. v. Sachen,* 682 F.2d 672, 678 (7th Cir.1982). *Record Head* concluded that "nothing in . . . [*Flipside*] shows that the Justices intended any departure from *Grayned's* treatment of fair notice and arbitrary enforcement [in the latter sense] as co-equal dangers." *Record Head,* 682 F.2d at 677–78. We must agree. Nevertheless, emphasis upon the notice prong of the vagueness test is "almost inescapable in reviewing a pre-enforcement challenge to a law." *Flipside,* 455 U.S. at 503, 102 S.Ct. at 1195. Because no evidence can be introduced to indicate whether a law has been enforced in a discriminatory manner, *Id.,* we think that the risk of arbitrary enforcement must be more than speculation in order to render a statute void for vagueness; it must be a clear and concrete danger.

Act 186 contains a nonexhaustive list of factors to guide law enforcement authorities and the courts in determining whether an object is drug paraphernalia, that is, whether it is possessed, delivered or manufactured with the requisite intent. Thus, discretion in enforcement is not unconstrained. Plaintiffs attack these factors, contending they are themselves vague, indefinite and irrelevant to proof of intent. Although all of the factors are not equally relevant and specific, *taken as a whole, see New England Accessories Trade Assoc. v. City of Nashua,* 679 F.2d 1, 6 (1st Cir.1982) (piecemeal analysis unnecessary), they

channel enforcement activities by providing objective measures for the evaluation of a particular factual situation. *Levas and Levas v. Village of Antioch,* 684 F.2d 446, 454 (7th Cir.1982). *See also Casbah, Inc. v. Thone,* 651 F.2d 551, 560 (8th Cir.1981) ("valuable guides"). As such, they are "likely to be susceptible to appropriate reevaluation: The prosecution can assess the arresting officer's case, the trial court can put the prosecutor to his proof, and the reviewing court can examine the trial court's findings." *Levas,* 684 F.2d at 454. Furthermore, as long as these objective measures exist, the fact that different minds may reach different results in applying the standards to a particular case does not render the statute void for vagueness. *The General Stores, Inc. v. Bingaman,* 695 F.2d 502, 504 (10th Cir.1982). In addition, the possibility that a police officer might seek to rely upon a factor inappropriate for the particular case is a speculative danger more properly reserved for a post-enforcement proceeding. *See Flipside,* 455 U.S. at 503, n. 21, 102 S.Ct. at 1196, n. 21.

### B. Plaintiffs' Other Constitutional Objections

In meeting Defendants' motion for summary judgment, Plaintiffs have offered no arguments in support of the other grounds asserted in their complaint, which Defendants contend are legally insufficient. After examining these claims we agree that they are without merit.

We have already considered Plaintiffs' Fourth Amendment concerns in connection with the vagueness analysis. *See note 9 supra.* The Act does not purport to eliminate the requirements of probable cause and due process, and any challenge based on the Fourth Amendment is premature. Similarly, Plaintiffs' claim under the Eighth Amendment is not ripe for adjudication.

Plaintiffs also allege that the Act constitutes a bill of attainder because it "allows an individual to be convicted based on past unrelated crimes." Complaint, ¶ 42. Presumably they are referring to that portion of the Act which allows consideration

of past convictions as *one* of the factors utilized in determining whether an object is drug paraphernalia. "A bill of attainder is a legislative Act which inflicts punishment without a judicial trial." *United States v. Lovett,* 328 U.S. 303, 315, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252 (1946). To label Act 186 as a bill of attainder is clearly absurd. An individual cannot be subjected to the penalties prescribed by the Act unless the Commonwealth proves *beyond a reasonable doubt* that he designed an item for drug use, delivered an item intending it for drug use or actually employed an item for drug use.

■ Plaintiffs' claims based upon the commerce clause and the equal protection clause are wholly without merit. The effect that drug paraphernalia laws have on interstate commerce is incidental compared to the legitimate public benefits derived from the drug paraphernalia legislation; they do not impermissibly burden interstate commerce. *Delaware Accessories Trade Assoc. v. Gebelein,* 497 F.Supp. 289, 296 (D.Del.1980); *World Imports, Inc. v. Woodbridge Township,* 493 F.Supp. 428, 434 (D.N.J.1980). Under the equal protection clause, when legislation does not implicate any fundamental rights or create any suspect classifications, it must only satisfy a rational relationship test. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). While we have difficulty finding that the Act sets up any classification according to store,[16] *see Stoianoff v. Montana,* 695 F.2d 1214, 1223 (9th Cir.1983), as Plaintiffs allege, Complaint ¶ 38, assuming *arguendo* that it does, the Act easily meets the rational relationship test. The Commonwealth of course has a legitimate interest in combatting drug abuse. "One need not squint in the dark to perceive a link between the illegal use of drugs . . . and items used to facilitate drug use." *Tobacco Accessories & Novelty Craftsmen Assoc. v. Treen,* 681 F.2d 378,

386 (5th Cir.1982). In deciding upon the specific means to address the problem, the legislature can rely on actual or hypothetical facts, and can attack only certain aspects of the problem without having to justify its failure to fashion a comprehensive solution. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955). *See Record Head Corp. v. Sachen,* 682 F.2d 672, 679 (7th Cir.1982). Certainly, it is not irrational that a dealer in tobacco products would sell to his customers a multi-purpose item for use with tobacco, rather than for use with drugs.

■ Finally, we fail to see on what federal grounds Plaintiffs' are attacking the forfeiture provision of the Act. Complaint, ¶ 41. It does not offend the just compensation and due process requirements of the Fifth and Fourteenth Amendments. *Casbah v. Thone,* 651 F.2d 551, 562 (8th Cir. 1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982). *See also One 1965 Buick 4-Door Sedan v. Commonwealth,* 46 Pa.Commw.Ct. 189, 408 A.2d 157 (1979) (forfeiture provision of Controlled Substances Act meets due process requirements).

## III. CONCLUSION

Based on the foregoing discussion, we have concluded that no genuine issue of material fact exists for trial and that under the applicable principles of law Defendants are entitled to summary judgment. We will grant Defendants' motion by entry of an appropriate order.

## APPENDIX

### DRUG PARAPHERNALIA

### ACT NO. 1980–186

### S.B. NO. 634

An Act amending the act of April 14, 1972 (P.L. 233, No. 84), entitled

---

**16.** The Act merely allows consideration of *circumstantial evidence* in determining whether an object is drug paraphernalia. Among the circumstantial factors to be considered is "whether the owner, or anyone in control of the object is a *legitimate supplier* of like or related items to the community, *such as* a licensed distributor or dealer of tobacco products. . . ." 35 P.S. § 780–102(b). The prohibited acts, defined in 35 P.S. § 780–113(a)(32)– (34), are not described in terms of the type of store.

"An act relating to the manufacture, sale and possession of controlled substances, other drugs, devices and cosmetics; conferring powers on the courts and the secretary and Department of Health, and a newly created Pennsylvania Drug, Device and Cosmetic Board; establishing schedules of controlled substances; providing penalties; requiring registration of persons engaged in the drug trade and for the revocation or suspension of certain licenses and registrations; and repealing an act," prohibiting the possession, manufacture, delivery and advertisement of drug paraphernalia and providing for the seizure of drug paraphernalia.

*The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:*

Section 1.

Subsection (B) of section 2, act of April 14, 1972 (P.L. 233, No. 64), known as "The Controlled Substance, Drug, Device and Cosmetic Act," is amended by adding a definition to read:

Section 2.   Definitions [3] * * *

(B) As used in this act:

&ast; &ast; &ast; &ast; &ast; &ast;

"Drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.   It includes, but is not limited to:

(1) Kits used, intended for use or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived.

(2) Kits used, intended for use or designed for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances.

(3) Isomerization devices used, intended for use or designed for use in increasing the potency of any species of plant which is a controlled substance.

(4) Testing equipment used, intended for use or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances.

(5) Scales and balances used, intended for use or designed for use in weighing or measuring controlled substances.

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use or designed for use in cutting controlled substances.

(7) Separation gins and sifters used, intended for use or designed for use in removing twigs and seeds from or in otherwise cleaning or refining marihuana.

(8) Blenders, bowls, containers, spoons and mixing devices used, intended for use or designed for use in compounding controlled substances.

(9) Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances.

(10) Containers and other objects used, intended for use or designed for use in storing or concealing controlled substances.

(11) Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injected controlled substances into the human body.

(12) Objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marihuana, cocaine, hashish or hashish oil into the human body, such as:

(I) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls.

(II) Water pipes.

(III) Carburetion tubes and devices.

(IV) Smoking and carburetion masks.

(V) Roach clips; meaning objects used to hold burning material such as a marihuana

---

**3.**   35 P.S. § 780–102.

cigarette, that has become too small or too short to be held in the hand.

(VI) Miniature cocaine spoons and cocaine vials.

(VII) Chamber pipes.

(VIII) Carburetor pipes.

(IX) Electric pipes.

(X) Air-driven pipes.

(XI) Chillums.

(XII) Bongs.

(XIII) Ice pipes or chillers.

In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, statements by an owner or by anyone in control of the object concerning its use, prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance, the proximity of the object, in time and space, to a direct violation of this act, the proximity of the object to controlled substances, the existence of any residue of controlled substances on the object, direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this act, the innocence of an owner or of anyone in control of the object, as to a direct violation of this act should not prevent a finding that the object is intended for use or designed for use as drug paraphernalia, instructions, oral or written, provided with the object concerning its use, descriptive materials accompanying the object which explain or depict its use, national and local advertising concerning its use, the manner in which the object is displayed for sale, whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products, direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise, the existence and scope of legiti-

mate uses for the object in the community, and expert testimony concerning its use.

\*      \*      \*      \*      \*      \*

Section 2.

Subsection (a) of section 13 of the act is amended by adding clauses and the section is amended by adding a subsection to read:

Section 13.   Prohibited Acts; Penalties [4]

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\*      \*      \*      \*      \*      \*

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

(33) The delivery of, possession with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it would be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of this act.

(34) The placing in any newspaper, magazine, handbill of other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part is to promote the sale of objects designed or intended for use as drug paraphernalia.

\*      \*      \*      \*      \*      \*

(i) Any person who violates clauses (32), (33) and (34) of subsection (a) is guilty of a misdemeanor and upon conviction thereof shall be sentenced to pay a fine not exceeding two thousand five hundred dollars ($2,500) or to imprisonment not exceeding

**4.**   35 P.S. § 780–113, cls. 32 to 34 of subsec. (a), subsec. (1).

one (1) year, or to both. Any person who violates clause (33) by delivering drug paraphernalia to a person under eighteen (18) years of age who is three (3) or more years his junior shall be guilty of a misdemeanor of the second degree and upon conviction thereof shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000) or to imprisonment not exceeding two (2) years, or to both.

Section 3.

Clause (1) of subsection (a) of section 28 of the act is amended to read:

Section 28. Forfeiture [5]

(a) The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

(1) All drug paraphernalia, controlled substances or other drugs which have been manufactured, distributed, dispensed, or acquired in violation of this act.

    \*     \*     \*     \*     \*     \*

Section 4.

The act is amended by adding a section to read:

Section 41.1. Effect on Local Ordinances [6]

Nothing in this act relating to drug paraphernalia shall be deemed to supersede or invalidate any consistent local ordinance, including zoning and nuisance ordinances, relating to the possession, sale or use of drug paraphernalia.

Section 5.

This act shall take effect in 60 days.

Approved the 4th day of December A.D. 1980.

5. 35 P.S. § 780–128, cl. 1 of subsec. (a).

6. 35 P.S. § 780–141.