**F I L E D**

<u>PUBLISH</u>

**July 18, 2005**

**UNITED STATES COURT OF APPEALS**

**PATRICK FISHER**
**Clerk**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

TONY BUONOCORE,

      Defendant - Appellant.

No. 03-4201

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:01-CR-488-TC)**

---

Bradley P. Rich (Peter D. Goodall with him on the briefs), Yengich, Rich & Xaiz, Salt Lake City, Utah, for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Paul M. Warner, United States Attorney, and Wayne T. Dance, Assistant United States Attorney, with her on the briefs), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    Tony Buonocore ("Defendant") was charged in a two-count indictment with knowingly and intentionally distributing ephedrine and pseudoephedrine knowing or having reasonable cause to believe that they would be used to manufacture

methamphetamine, in violation of 21 U.S.C. § 841(c)(2). Defendant entered into an agreement with the government to plead guilty to one count in exchange for dismissal of the other count. At the change of plea hearing, the district court characterized Defendant's guilty plea as an Alford plea or a plea of nolo contendere because Defendant refused to admit an element of the offense. Pursuant to its general policy against such pleas, the district court rejected Defendant's plea. Defendant proceeded to trial and was convicted on both counts. In this appeal, Defendant challenges the district court's rejection of his plea and its refusal to give the "innocent merchant" jury instruction requested by Defendant. In addition, Defendant argues he is entitled to resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we AFFIRM the judgment and sentence of the district court.

## BACKGROUND

Defendant owns a company that was a licensed distributor of ephedrine and pseudoephedrine products. Terry Long, the owner of several tobacco and convenience stores, was one of Buonocore's customers. In May 2001, with Long's assistance as an informant, agents of the Drug Enforcement Administration ("DEA") arranged a controlled purchase of ephedrine and pseudoephedrine products from Defendant. In the audio-recorded transaction of

2

the controlled purchase, Long said to Defendant that "the meth cooks must be cookin like crazy," and "I must have had a run, there's a bunch of meth cooks in town, that's what their [sic] using them for so . . ."

Based on this controlled purchase, Defendant was charged in a two-count indictment with knowingly and intentionally distributing ephedrine (Count I) and pseudoephedrine (Count II) knowing or having reasonable cause to believe that they would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2).[1]  Before trial, Defendant agreed to plead guilty to Count I in

---

[1]Under 21 U.S.C. § 841(c):

Any person who knowingly or intentionally–

> (1) possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

> (2) possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter; or

> (3) with the intent of causing the evasion of the recordkeeping or reporting requirements of section 830 of this title, or the regulations issued under that section, receives or distributes a reportable amount of any listed chemical in units small enough so that the making of records or filing of reports under that section is not required;

shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical, or both.

exchange for the government's agreement to dismiss Count II and recommend a sentence of probation only.

At the outset of the change of plea hearing, the district court advised Defendant that it would not accept the plea if Defendant would not admit guilt. Defense counsel indicated that this would not be a problem. Later, the court went through the elements of the offense with Defendant to determine the factual basis of the plea. The court asked Defendant, "Did you know that that ephedrine was going to be used in the manufacture by someone of methamphetamine?" Defendant responded, "No, I didn't, Your Honor."

Defense counsel then objected, "I think if the court will allow, I think under the Supreme Court decision–." The court interrupted, "I do not accept Alfred [sic] pleas. That's what I told you at the beginning. I don't accept them. I don't accept Alfreds [sic]. I don't accept nolos. I cannot do this. You must admit intent. I simply do not, nor will I. And I know the Supreme Court allows me to do it. It's disfavored, and I see no reason in this case to do that." The court rejected Defendant's plea and set the case for trial.

Defendant filed a written objection, arguing that the court abused its discretion by rejecting Defendant's plea pursuant to its policy against Alford and nolo pleas. The district court overruled Defendant's objection, affirming its denial of Defendant's plea. Defendant was convicted on both counts and

4

sentenced to 97 months in prison followed by 36 months of supervised release. Defendant timely filed this appeal.

## DISCUSSION

### I.  Rejection of Defendant's Plea

A district court's decision to reject a plea is reviewed for abuse of discretion.  See United States v. Young, 45 F.3d 1405, 1414 (10th Cir. 1995).

Defendant argues that he was prepared to admit his guilt at the change of plea hearing but that the district court, because of its misunderstanding of the applicable statute, mis-characterized Defendant's intended guilty plea either as an Alford plea or as a plea of nolo contendere.[2]  In the alternative, Defendant argues that even if the district court properly characterized his plea as an Alford or nolo plea, the court abused its discretion by rejecting that plea pursuant to its policy against such pleas.  We address each argument in turn.

### A.  Characterization of Defendant's Plea as an *Alford* Plea or a Plea of Nolo Contendere

[2]A plea of nolo contendere is "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." North Carolina v. Alford, 400 U.S. 25, 35 (1970).  An "Alford" plea, named after the Supreme Court's decision in North Carolina v. Alford, is a plea denominated as a guilty plea but accompanied by protestations of innocence.  See id. at 37.  Courts determining whether to accept Alford pleas are to treat them as pleas of nolo contendere.  See Fed. R. Crim. P. 11 advisory committee's note (1974).

Under 21 U.S.C. § 841(c)(2), it is unlawful knowingly or intentionally to "possess[] or distribute[] a listed chemical *knowing*, or *having reasonable cause to believe*, that the listed chemical will be used to manufacture a controlled substance . . . ." 21 U.S.C. § 841(c)(2) (emphasis added). At the change of plea hearing, the district court asked Defendant only whether he "knew" that the products he was selling would be used to manufacture methamphetamine and did not ask him whether he "had reasonable cause to believe" that the products would be used to manufacture methamphetamine. When Defendant denied that he "knew" that the products would be used to manufacture methamphetamine, the district court immediately rejected his plea, characterizing it as an Alford or nolo plea.

Defendant now argues that he was prepared to admit that he "had reasonable cause to believe" that the products he sold would be used to manufacture methamphetamine but that the district court, by prematurely terminating the plea colloquy, did not allow him to admit his guilt and thus mischaracterized his plea as an Alford or nolo plea.

In general, this court will not consider a theory on appeal not raised or ruled on below. See Tele-Communications, Inc. v. Comm'r of Internal Revenue, 104 F.3d 1229, 1232-33 (10th Cir. 1997). Defendant failed to object to the district court's rejection of his plea on the basis that the court, due to its

6

premature termination of the plea colloquy, mis-characterized Defendant's plea as an Alford or nolo plea. To the contrary, Defendant expressly admitted that he intended to offer an Alford or nolo plea and objected only on the ground that the district court's general policy against such pleas was an abuse of the court's discretion. Specifically, in his written objection following the change of plea hearing Defendant said, "Because the Defendant would not 'admit' guilt but rather was only willing to accept punishment for the alleged crime, the court required him to try the matter." Accordingly, the district court had no notice of Defendant's current objection and was therefore unable to make a ruling or take corrective action based on that objection.

Attempting to avoid a finding of waiver, Defendant points out that at the beginning of the change of plea hearing he put the court on notice that he intended to admit guilt and that this notice should serve as an objection that preserves his argument for appeal. However, at the beginning of the change of plea hearing, the court instructed the parties that it would not accept a plea of nolo contendere, that Defendant would be required to admit guilt. Defense counsel responded that this would not be a problem. Thus Defendant's placing the court on notice that he intended to admit guilt does not remedy Defendant's failure to object to the district court's alleged misunderstanding of the later plea colloquy, which is the basis of Defendant's current objection.

7

Because Defendant failed to raise this issue below, we review the district court's action for plain error only. See United States v. Brown, 316 F.3d 1151, 1155 (10th Cir. 2003). Under the plain error standard of review, we may exercise our discretion to reverse (1) error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. See id. (citing United States v. Olano, 507 U.S. 725, 732 (1993)).

Defendant has not demonstrated that the district court plainly erred in characterizing his plea as an Alford or nolo plea. Defendant acknowledged in his written objection that "Defendant would not 'admit' guilt but rather was only willing to accept punishment for the alleged crime," and then argued that the district court abused its discretion by refusing to accept any plea accompanied by a protestation of innocence. Defendant's objection demonstrates that he did not intend to admit his guilt regardless of the questions the district court asked him, but instead planned to offer an Alford or nolo plea. Accordingly, the district court did not plainly err in characterizing Defendant's plea as an Alford or nolo plea.

## B. Rejection of Defendant's <u>Alford</u> Plea or Plea of Nolo Contendere

Defendant argues in the alternative that, even if the district court properly characterized Defendant's plea as an <u>Alford</u> or nolo plea, the district court abused its discretion by rejecting the plea pursuant to the court's general policy against such pleas.

The Supreme Court has held that a district court may accept a plea of guilty even if that plea is accompanied by protestations of innocence. In <u>North Carolina v. Alford</u>, the trial court accepted the defendant's guilty plea even though the defendant maintained his innocence as he offered the plea. <u>See</u> 400 U.S. 25, 28-29 (1970). The defendant then sought post-conviction relief on the basis that his plea was involuntary because he pled guilty only to avoid the death penalty. <u>See</u> <u>id.</u> at 29-30. The Supreme Court equated the plea offered by the defendant to a plea of nolo contendere, <u>see</u> <u>id.</u> at 37, and held that when there is a strong factual basis for the plea, it is not unconstitutional for a court to accept a guilty plea despite the defendant's professed belief in his innocence, <u>see</u> <u>id.</u> at 38.

The Court noted that "[o]ur holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead." <u>Id.</u> at 38 n.11. The Court then stated that

> [a] criminal defendant does not have an absolute right under the
> Constitution to have his guilty plea accepted by the court, although
> the States may by statute or otherwise confer such a right. Likewise,
> the States may bar their courts from accepting guilty pleas from any

9

defendants who assert their innocence.

Id. (internal citation omitted). The Court further noted that Rule 11 of the Federal Rules of Criminal Procedure gives federal district judges discretion to refuse to accept a plea of guilty, and stated that "[w]e need not now delineate the scope of that discretion." Id. Accordingly, the question left open by Alford is whether the Federal Rules of Criminal Procedure limit a district court's discretion to reject Alford or nolo pleas.

When a defendant offers an Alford plea (i.e., a guilty plea accompanied by protestations of innocence), the proper procedure is to treat the plea as a plea of nolo contendere. See Fed. R. Crim. P. 11 advisory committee's note (1974). Rule 11 provides that a defendant may plead nolo contendere only "with the court's consent." Fed. R. Crim. P. 11(a)(1). "Before accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice." Fed. R. Crim. P. 11(a)(3).

Rule 11 is silent with respect to what, if anything, the court must consider before *rejecting* a plea of nolo contendere. See id. According to the Advisory Committee:

> The defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions. The rule is intended to make clear that a judge may reject a plea of

10

> nolo contendere and require the defendant either to plead not guilty
> or to plead guilty under circumstances in which the judge is able to
> determine that the defendant is in fact guilty of the crime to which he
> is pleading guilty.

Fed. R. Crim. P. 11 advisory committee's note (1974). As this note demonstrates, the Advisory Committee recognized the difficulties inherent in the acceptance of nolo pleas[3] and appears to vest discretion in the district court to adopt a policy requiring a defendant either to admit guilt or to plead not guilty. See id. In short, Rule 11 appears to sanction, and perhaps even encourage, the policy employed by the district court in this case.

We have not yet taken a position on the issue presented in this case, but we have recognized the district court's broad discretion in determining whether to accept a plea of nolo contendere. In United States v. Soltow, 444 F.2d 59 (10th

---

[3]Learned Hand referred to the idea of accepting nolo pleas as "a foolish concept." See 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 177, at 285-86 (3d ed. 1999) (noting that use of the nolo plea has been criticized as "one of the factors which has tended to breed contempt for federal law enforcement" because "the public regards consent to such a plea by the Government as an admission that it has only a technical case at most and that the whole proceeding was just a fiasco") (quotations omitted); see also United States v. Bearden, 274 F.3d 1031, 1043 (6th Cir. 2001) (Rosen, J., concurring) (urging court to hold that it is within judge's discretion to adopt general policy against nolo pleas and recognizing view that "by accepting a nolo plea, the court is placing its imprimatur upon a fiction in order to assist a criminal defendant in avoiding civil liability"); United States v. Bednarski, 445 F.2d 364, 366 (1st Cir. 1971) ("However legally sound the Alford principle, which of course we do not dispute, the public might well not understand or accept the fact that a defendant who denied his guilt was nonetheless placed in a position of pleading guilty and going to jail.").

11

Cir. 1971), the defendant wished to plead nolo contendere, but the district court said, "If Mr. Soltow wants to change his plea, he may do so, but I'll not accept a nolo contendere plea. I see nothing unusual in this case from the hundreds of others that come through the Court all the time." Id. at 60-61 & n.1 (quotations omitted). We held that the district court did not abuse its discretion in refusing to accept that plea and requiring the defendant either to plead guilty or go to trial. See id. at 61. We noted that "'[i]t is not necessary to decide whether a refusal to accept a plea of nolo contendere under certain circumstances may constitute an abuse of discretion. All the cases hold that the trial court is vested with a broad discretion in determining whether a plea of nolo contendere shall be accepted.'" Id. (quoting Mason v. United States, 250 F.2d 704, 706 (10th Cir. 1957)).

In United States v. Young, 45 F.3d 1405 (10th Cir. 1995), we held that the district court did not abuse its discretion in rejecting a guilty plea when the defendant refused to admit the intent element of the crime. See id. at 1413-14. We noted that "[a]lthough a defendant may in some circumstances plead guilty without admitting all the elements of the offense, see Alford, those circumstances are not presented here." Id. at 1414. Presumably, the "circumstances" to which we referred in Young included the existence of a strong factual basis for the plea. Nevertheless, we did not indicate in Young that a district court would abuse its discretion in rejecting an Alford plea even under such circumstances. See id.

12

Other courts of appeals have held that a district court may reject a plea of guilty or nolo contendere solely on the basis that the defendant refused to acknowledge his guilt. See United States v. Gomez-Gomez, 822 F.2d 1008, 1011 (11th Cir. 1987); United States v. O'Brien, 601 F.2d 1067, 1069-70 (9th Cir. 1979); United States v. Dorman, 496 F.2d 438, 440 (4th Cir. 1974). In addition, although it did not decide the issue, the Seventh Circuit noted that "it seems at least arguable that the acceptance of a nolo plea is so broadly a matter of discretion that a judge's adoption of a policy against such a plea is itself within his discretion . . . ." United States v. Gratton, 525 F.2d 1161, 1163 (7th Cir. 1975). Cf. United States v. Cepeda Penes, 577 F.2d 754, 756 (1st Cir. 1978) ("[A]cceptance of a nolo plea is solely a matter of grace . . . .").

Secondary sources also provide support for the proposition that a district court has discretion to reject Alford or nolo pleas based on a general policy against such pleas. According to Wright and Miller, "the court is not required to accept a guilty plea from one who asserts he is innocent." 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 174, at 201-02 (3d ed. 1999). "It is discretionary with the court whether to accept the plea and it is wholly unlikely that refusal to accept the plea would be regarded as error on appeal." Id. § 177, at 294. According to the American Law Reports:

> One of the most important characteristics of the plea of nolo contendere, which distinguishes it fundamentally from the plea of

13

guilty to which it is so frequently linked by the courts, is that its acceptance by the court is not a matter of right of the defendant but is *entirely* within the discretion of the court.

All the later cases support the proposition that the plea of nolo contendere cannot be entered by the defendant as a matter of right but is pleadable only by leave of court, its acceptance by the court being *entirely* a matter of grace.

89 A.L.R. 2d 540, § 14 (emphasis added).

Relying on the broad discretion that Rule 11 affords district courts in rejecting Alford and nolo pleas, we hold that a district court's adoption of a general policy against Alford or nolo pleas is permissible. In this case, then, the district court did not abuse its discretion in rejecting Defendant's plea pursuant to such a policy.

## II. "Innocent Merchant" Jury Instruction

We review jury instructions *de novo* to determine whether, as a whole, the instructions correctly state the governing law and provide the jury with an ample understanding of the issues and applicable standards. See United States v. Fredette, 315 F.3d 1235, 1240 (10th Cir. 2003). "The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." Id. (quotations omitted). While we review the instructions as a whole *de novo*, the district court's decision to give a particular jury instruction is reviewed for abuse

14

of discretion.  See id. at 1241.

Defendant in this case requested the following jury instruction:

A legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances.  The dealer, on the other hand, who sells innocuous items with the intent that they be used [unlawfully], is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law.  Even an illicit dealer, however, is not to be held legally responsible for guessing what is in the mind of the buyer.  The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue.

The proposed instruction is a passage extracted from Delaware Accessories Trade Ass'n v. Gebelein, 497 F. Supp. 289, 294 (D. Del. 1980).  In Gebelein, the district court considered the constitutionality of a Delaware statute, patterned after the DEA's Model Drug Paraphernalia Act, that made it unlawful to "deliver, possess with intent to deliver, or manufacture with the intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to violate drug laws."  Id. at 290, 293 (quotations omitted).  The plaintiffs challenged the act on the basis that the inclusion of a constructive knowledge standard ("reasonably should know") rendered the act unconstitutionally vague.  See id. at 293-94.

In rejecting the plaintiffs' argument, the district court in Gebelein stated that the statute includes two *mens rea* prongs that must both be satisfied: "(1) that the defendant intended that an item would be used for the production or

15

consumption of controlled substances and also (2) that he either knew, or that he acted in a set of circumstances from which a reasonable person would know, that the buyer of the item would thereafter use it for those purposes." Id. at 294. The first *mens rea* prong is derived from the definition of "drug paraphernalia," which is defined as products or materials "used, intended for use, or designed for use" in producing or consuming controlled substances. Id. at 291 (quotations omitted); see also New England Accessories Trade Ass'n v. Tierney, 691 F.2d 35, 36-37 (1st Cir. 1982) (interpreting Maine Drug Paraphernalia Act, also patterned after DEA's Model Drug Paraphernalia Act). In the passage of the Gebelein opinion extracted by Defendant, the court was explaining the interplay between these two *mens rea* prongs. See 497 F. Supp. at 294.

For two reasons, application of this passage from Gebelein to this case in the form of a jury instruction would have been inappropriate. First, it would have thrown wholly undefined terms at the jury. The jury would have needed to know what is a "legitimate merchant" and what is an "innocuous item." Having failed to define these terms, the instruction would have done little more than generate confusion.

Second, and more importantly, the *mens rea* element of § 841(c)(2), the statute under which Defendant in this case was convicted, differs in relevant part from the *mens rea* element of the act at issue in Gebelein. Thus, the Gebelein

16

court's discussion of the interplay between the two *mens rea* requirements is not an accurate statement of the law of § 841(c)(2). See United States v. Saffo, 227 F.3d 1260, 1269 n.7 (10th Cir. 2000) (contrasting what is now § 841(c)(2) with a law based on the Model Drug Paraphernalia Act at issue in Kansas Retail Trade Coop. v. Stephan, 695 F.2d 1343, 1344-45 (10th Cir. 1982)). Accordingly, the district court did not abuse its discretion in refusing to give the requested instruction to the jury.

The instructions provided by the district court with respect to the disputed *mens rea* element "correctly state[d] the governing law and provide[d] the jury with an ample understanding of the issues and applicable standards." Fredette, 315 F.3d at 1240 (quotations omitted). The court instructed the jury that Defendant must have known or had reasonable cause to believe that the ephedrine and pseudoephedrine he sold would be used to manufacture methamphetamine. The court further instructed the jury that this inquiry is entirely subjective, the inquiry is not to be viewed from the perspective of a hypothetical reasonable person, and the *mens rea* element is not satisfied if Defendant acted through mistake, negligence, carelessness, or belief in an inaccurate proposition. The instructions, viewed as a whole, provided the jury with an ample understanding of the disputed *mens rea* element, and no additional instructions were required.

## III. Sentencing Error

For the first time on appeal, Defendant argues he is entitled to resentencing under Booker, 125 S. Ct. at 738.[4]

> In Booker, the Court "reaffirm[ed that] [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756. As a result, the Court held that mandatory application of the Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence.

United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). "To remedy this constitutional infirmity created by applying judge-found facts to mandatory sentencing guidelines, the [Booker] Court severed the provision of the Sentencing Reform Act making application of the Guidelines mandatory," 18 U.S.C. § 3553(b)(1). United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir. 2005). There are, then, "two distinct types of [Booker] error." Gonzalez-Huerta, 403 F.3d at 731. First, the sentencing court can violate the Sixth Amendment "by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." Id. Second, a sentencing court can commit non-constitutional Booker error "by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence

---

[4]This court permitted the parties to file supplemental briefs after the Supreme Court decided Booker.

18

was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." Id. at 731-32.

Booker applies "to all cases on direct review." Booker, 125 S. Ct. at 769. Nonetheless, because Defendant did not raise this issue at sentencing, we review only for plain error. See Gonzalez-Huerta, 403 F.3d at 732.

Although Defendant argues that the district court violated the Sixth Amendment by imposing a sentence based upon the quantity of ephedrine and pseudoephedrine the court found that Defendant unlawfully distributed, there is no constitutional error in this case because Defendant admitted unlawfully distributing those specific amounts during his sentencing. The presentence report calculated Defendant's sentence based upon the "39.35 grams of Ephedrine and 43.2 grams of Pseudoephedrine" Defendant sold to the government's confidential informant on May 11, 2001. The government objected to those amounts, arguing instead that Defendant's sentence calculation should also include the 2,625 grams of ephedrine that federal authorities later seized from Defendant on May 23, 2001.[5] In response to the government's argument, defense counsel affirmatively asserted at sentencing that the district court should only base Defendant's sentence on the amount of controlled substances already included in the

---

[5]At sentencing, the government alternatively argued that the district court should, instead, include Defendant's sales of controlled substances to a particular convenience store between January and May 2001.

19

presence report's calculations, stating, "I still believe that the calculations in the guidelines provided by the probation department are in fact correct, and we object to any attempt to include [other] amounts." Defense counsel further asserted that "the presentence preparers are exactly correct. [Defendant] ought to be punished for what he did. He's been convicted of it." Thus Defendant, acting through his counsel, admitted unlawfully distributing the amount of controlled substances included in the presentence report. The district court agreed, calculating Defendant's sentence only on the amount of controlled substances included in the presentence report. Because Defendant admitted unlawfully distributing those amounts, the district court did not violate the Sixth Amendment when the court used those amounts to calculate Defendant's sentence. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).[6]

The district court did commit non-constitutional Booker error, however, when the court treated the Guidelines as mandatory, rather than discretionary. See United States v. Sierra-Castillo, 405 F.3d 932, 941 (10th Cir. 2005); United States v. Trujillo-Terrazas, 405 F.3d 814, 818-19 (10th Cir. 2005). That error satisfies the first two prongs of the plain-error analysis. See Gonzalez-Huerta,

---

[6]    In United States v. Bass, No. 04-6049, 2005 WL 1525469, at*4 n.7 (10th Cir. June 29, 2005), we held that a defendant's failure to object to facts in a presentence report did not amount to an admission of those facts. Here, however, as in Shelton, there is more. There is an affirmative adoption of the facts in the presentence report.

403 F.3d at 732. The government concedes as much in its brief.

Turning to the plain-error test's prejudice inquiry, we consider whether Defendant has met his burden of establishing that this plain error affected his substantial rights. See Trujillo-Terrazas, 405 F.3d at 819. "To demonstrate that the mandatory application of the Guidelines affected substantial rights, a defendant must show a reasonable probability that the defects in his sentencing altered the result of the proceedings." Id. (quotation omitted). Defendant "can make this showing by demonstrating a reasonable probability that had the district court applied the post-Booker sentencing framework, he would have received a lesser sentence." Id.

We do not need to address the prejudice prong under Olano because, in any event, Defendant cannot meet his burden under the fourth prong. See Gonzalez-Huerta, 403 F.3d at 737. "Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 736. "In an instance of non-constitutional error the standard for satisfying the fourth prong of the plain error test is demanding." Dazey, 403 F.3d at 1178. "[F]ailing to correct non-Sixth Amendment Booker error when the defendant has failed to preserve the error in the district court will rarely be found to [have] seriously affected the fairness, integrity, or public reputation of judicial

21

proceedings." Sierra-Castillo, 405 F.3d at 941-42; see also Trujillo-Terrazas, 405 F.3d at 820 (calling this a "formidable" standard).

> Evidence that would tend to support an exercise of our discretion under this standard might include, for example: (a) a sentence increased substantially based on a Booker error; (b) a showing that the district court would likely impose a significantly lighter sentence on remand; (c) a substantial lack of evidence to support the entire sentence the Guidelines required the district court to impose; (d) a showing that objective consideration of the [18 U.S.C.] § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines; or (e) other evidence peculiar to the defendant that demonstrates a complete breakdown in the sentencing process.

United States v. Dowlin, 408 F.3d 647, 669, 671 (10th Cir. 2005) (addressing both constitutional and non-constitutional Booker error) (internal citations omitted). Defendant has failed to show that any such circumstances exist in his case.

Addressing the first, second and fourth circumstances, there is no indication that the district court's treating the guidelines as mandatory rather than advisory substantially increased Defendant's sentence. Nor is there any indication that the district court would impose a significantly lighter sentence were we to remand now for resentencing. Rather, Defendant's sentence fell within the applicable guideline range. There "is nothing remarkable about [Defendant's] criminal history." Trujillo-Terrazas, 405 F.3d at 820. Nor does Defendant suggest any "unique circumstances" that might provide the district

22

court with a reason to impose a sentence outside the now advisory guideline range. United States v. Williams, 403 F.3d 1188, 1200 (10th Cir. 2005). There is, then, no indication that Defendant's sentence "is anything but fair and reasonable." Trujillo-Terrazas, 405 F.3d at 820; see also Gonzalez-Huerta, 403 F.3d at 738-39. He "received a sentence similar to the sentence most similarly historied defendants in the United States would have received for the crime for which he was convicted." Gonzalez-Huerta, 403 F.3d at 743 (Ebel, J., concurring).

Addressing the third situation Dowlin mentions, there was no substantial lack of evidence supporting the "entire sentence the Guidelines required." Dowlin, 408 F.3d at 671. In fact, as we previously discussed, Defendant admitted the quantity of drugs upon which the district court based his Guideline sentence. Finally, there is no "other evidence peculiar to the defendant that demonstrates a complete breakdown in the sentencing process." Id.

For these reasons, therefore, "[c]ore notions of justice would not be offended if this court declined to notice a sentencing error that had no [significant] effect on [Defendant's] sentence." United States v. Lawrence, 405 F.3d 888, 908 (10th Cir. 2005); see also Gonzalez-Huerta, 403 F.3d at 739. We therefore decline to notice the district court's sentencing error and instead AFFIRM Defendant's sentence.

**CONCLUSION**

For the foregoing reasons, we conclude that the district court did not abuse its discretion in rejecting Defendant's plea, did not abuse its discretion in refusing to give the requested "innocent merchant" jury instruction, provided jury instructions that adequately covered the issues presented in this case, and did not commit plain error requiring correction in imposing sentence. Accordingly, we AFFIRM the judgment and sentence of the district court.

No. 03-4201, *United States v. Buonocore*

Seymour, J., concurring.


I agree with the majority that we must affirm the judgment of the district court. I write separately because I disagree with the majority's conclusion that there was no Sixth Amendment violation with respect to Mr. Buonocore's sentencing. In my view, the district court violated Mr. Buonocore's Sixth Amendment rights by mandatorily imposing a sentence based upon the quantity of ephedrine and pseudoephedrine it found by a preponderance of the evidence. *See United States v. Booker*, 125 S. Ct. 738, 749 (2005) (noting that defendant's Sixth Amendment right to have a jury find any fact essential to punishment "is implicated whenever a judge seeks to impose a sentence that is not solely based on facts reflected in the jury verdict or admitted by the defendant") (internal quotations omitted).

Mr. Buonocore was convicted by a jury of one count of selling ephedrine and one count of selling pseudoephedrine having reasonable cause to believe that those chemicals would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2). Because the indictment did not allege the weight or purity of the precursor chemicals, those factual questions were neither presented to the jury nor found beyond a reasonable doubt.

The presentence report (PSR) calculated Mr. Buonocore's offense level at

30, reflecting a drug quantity of 36.5 grams of ephedrine and 43.2 grams of pseudoephedrine. *See* U.S.S.G. § 2D1.11. Due to a total offense level of 30 and a criminal history category of I, Mr. Buonocore's applicable guideline range was 97 to 121 months. *See id*. at Ch. 5 Pt. A. The government objected to the PSR on the basis that "2625 grams of Ephedrine seized from [Buonocore's] home business during a search warrant after the charged offense" was not included in the drug quantity calculation as relevant conduct. Aple. Supp. App. at 3. Mr. Buonocore did not object to the PSR. At sentencing, the district court rejected the government's drug quantity argument because Mr. Buonocore legally sold a large quantity of ephedrine and there was no evidence of unlawful intent with respect to the 2625 grams. The court then sentenced Mr. Buonocore at the low end of the guidelines range, to 97 months imprisonment. Aple. Supp. App. at 19.

Mr. Buonocore contends the district court violated his Sixth Amendment rights by imposing a mandatory sentence based upon the judge-found quantity of ephedrine and pseudoephedrine involved in his offense. The majority holds that the district court did not commit constitutional error because the "Defendant admitted unlawfully distributing those specific amounts during his sentencing." Slip op. at 19. In relevant part, the opinion states:

> [D]efense counsel, at sentencing, affirmatively asserted that the district court should only base Defendant's sentence on the amount of controlled substances already included in the presentence report's calculations: "I still believe that the calculations in the guidelines provided by the probation

2

department are in fact correct, and we object to any attempt to include [other] amounts." (Aple. Supp. App. at 6.) Defense counsel further asserted that "the presentence report preparers are exactly correct. [Defendant] ought to be punished for what he did. He's been convicted of it." (*Id*. at 12.) . . . . Because Defendant admitted unlawfully distributing those amounts, the district court did not violate the Sixth Amendment when the court used those amounts to calculate Defendant's sentence. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005).

*Id.* at 20. Thus, according to the majority, comments made by *defense counsel* in the course of a sentencing hearing constitute admissions by the defendant resulting in a waiver of his Sixth Amendment rights. Because the constitutional requirements for a valid waiver, the Federal Rules of Criminal Procedure, and this court's precedent weigh against allowing defense counsel's admission of facts for sentencing purposes to constitute an adequate waiver of a defendant's constitutional rights, I cannot agree.

A factual admission by a defendant that the government can prove drug quantity by a preponderance of the evidence, without more, simply does not fulfill the requirements of a voluntary and knowing waiver of the defendant's Sixth Amendment *Apprendi* rights.[1] *Cf. Bousley v. United States*, 523 U.S. 614, 618

---

[1]It is clear, of course, that a defendant can waive constitutional rights, including the bundle of Sixth Amendment rights referred to as *Apprendi* rights. *United States v. Blakely*, 124 S. Ct. 2531, 2541 (2004) ("nothing prevents a defendant from waiving his *Apprendi* rights . . . [i]f appropriate waivers are procured"). Accordingly, a valid waiver of *Apprendi* rights would allow a sentencing court to make a factual determination that may result in a defendant
(continued...)

3

(1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"); *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938). For nearly 70 years *Johnson* has provided that "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Id.* at 464 (citations omitted). Indeed, the Supreme Court recently reiterated this point and distinguished waiver from mere forfeiture:

> Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right" . . . . Although in theory it could be argued that "[i]f the question was not presented to the trial court no error was committed by the trial court, hence there is nothing to review". . . this is not the theory that Rule 52(b) adopts. If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an "error" within the meaning of Rule 52(b) despite the absence of a timely objection.

*United States v. Olano*, 507 U.S. 725, 733-34 (1993) (internal citations omitted). The Court's example of a valid "waiver" was "a defendant who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11." *Id*. at 733. Thus, it is difficult to understand how the majority can hold that a defendant's simple admission of facts not included in his guilty plea can serve as

---

¹(...continued)
receiving a sentence beyond the relevant statutory maximum sentence that the guilty plea itself supports. *Cf. United States v. Green*, 405 F.3d 1180 (10th Cir. 2005); *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004).

a knowing and voluntary waiver of the constitutional right to trial by jury and a finding of those facts beyond a reasonable doubt, which then allows a court to increase the relevant statutory maximum sentence pursuant to *Booker*.

The Supreme Court has clearly held that "'[p]resuming waiver from a silent record is impermissible.'" *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (quoting *Carnely v. Cochran*, 369 U.S. 506, 516 (1962)). A simple admission does not "speak" to whether the person has knowingly and voluntarily waived his constitutional rights. *Cf. Boykin*, 395 U.S. at 242-43. This is all the more true when the admission was by defense counsel, was arguably made strategically to avoid the government's assertion of a larger drug quantity, and was made before defendant or counsel was aware of the Sixth Amendment rights established in *Booker*.

"[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *see also United States v. Broce*, 488 U.S. 563, 570 (1989). The trial "judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.'" *McCarthy*, 394 U.S. at 467 (quoting FED. R. CRIM. P. 11, Notes of Advisory Committee on Criminal

5

Rules (1966)); *see Libretti v. United States*, 516 U.S. 29, 38 (1995); *Boykin*, 395 U.S. at 242-43. A "plea of guilty is *more than an admission of conduct*; it is a conviction." *Id.* at 242 (emphasis added) (citing *Woodward v. State*, 171 So. 2d 462, 469 (Ala. 1965)).

Accordingly, absent a sufficient waiver, we should not treat a defendant's (and particularly defense counsel's) admission of facts at sentencing like the "admission" of facts required to be proven beyond a reasonable doubt referred to in *Booker*, 125 S. Ct. at 756. *Cf. Boykin*, 395 U.S. at 242-43; *McCarthy*, 394 U.S. at 466. In the circumstances here, defendant was not aware of his rights to a jury trial and proof beyond a reasonable doubt with regard to the facts that increased the relevant statutory maximum sentence attributable to his conduct. *Cf. Johnson*, 304 U.S. at 465-67. Nor, unlike the defendants in *United States v. Hahn*, 359 F.3d 1315, 1317 (10th Cir. 2004), and *United States v. Green*, 405 F.3d 1180, 1189 (10th Cir. 2005), was he intending a general waiver of constitutional rights. *See United States v. Bass*, 04-6049, slip op. at 11 n.7 (10th Cir. 2005).

Rule 11(b) clearly outlines the proper method for receiving a defendant's waiver of rights during a guilty plea. FED. R. CRIM. P. 11(b). The rule includes a plethora of constitutional and statutory rights that a sentencing court must address. *Id*. As a matter of practice, no federal judge would take a guilty plea based solely on a defendant's factual admissions, *McCarthy*, 394 U.S. at 463-64,

because a mere admission of facts is insufficient. *See* FED. R. CRIM. P. 11(b); *cf. Johnson*, 304 U.S. at 465. Before taking a plea, and by conducting a colloquy pursuant to Rule 11(b), sentencing judges ensure that a defendant knows and understands his constitutional and statutory rights, and knowingly and voluntarily waives such rights. *See* FED. R. CRIM. P. 11(b). The fact that Rule 11(b) requires a sentencing court to personally address the defendant and ensure he knows what rights are being waived and that the waiver is voluntary underscores that an admission of facts by defense counsel cannot be used against a defendant to increase the relevant statutory maximum sentence.

One more point is worthy of discussion. The majority cites only one case to support its position that defense counsel commentary at sentencing constitutes an admission and, thus, a waiver of a defendant's Sixth Amendment rights. *See* slip op. at 20 (citing *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005)). In *Shelton*, the defendant contended the district court erred when it enhanced his sentence based on a judicial fact-finding of drug quantity. *Id.* at 1329. The Eleventh Circuit held that Shelton suffered no Sixth Amendment error because he "admitted to part of [his] drug quantity in his plea colloquy and to the rest . . . at sentencing." *Id.* at 1330. He also failed to object to the factual statements about his relevant conduct in the PSR. *Id.*

*Shelton*'s holding addressing factual admissions made by a defendant *under*

7

*oath at a plea colloquy* is inapposite. For reasons detailed above, admissions provided during a plea colloquy conducted pursuant to constitutional and Rule 11 safeguards are easily distinguishable from simple admissions made by a defendant or his defense counsel at sentencing. With respect to *Shelton*'s holding that the failure to object to facts asserted in the PSR constitutes waiver, this court has rejected that rule. Indeed, the panel's reliance on *Shelton*'s failure to object rule is completely contrary to our decisions in *United States v. Dowlin*, 408 F.3d 647, 670 & n.10 (10th Cir. 2005) (failure to object to relevant loss amount as stated in PSR and failure to object to district court's fact findings as to loss amount does not waive constitutional *Booker* error), and *Bass*, 04-6049, slip op. at 11 n.7, which expressly holds that failure to object to the PSR does not constitute waiver of a defendant's Sixth Amendment rights:

> Prior to *Booker*, we regularly held that the "[f]ailure to object to a fact in a presentence report, or failure to object at the [sentencing] hearing, acts as an admission of fact." *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994). Whatever the remaining validity of this precedent may be, we are unwilling to conclude that Bass' failure to object operated as an "admission of fact" for purposes of the rights announced in *Booker*. In other words, we are unwilling to say that Bass' failure to object resulted in a waiver of the Sixth Amendment requirement to "prove[] to a jury beyond a reasonable doubt" that he was involved in trafficking of child pornography. *Booker*, 125 S. Ct. at 756. *See generally United States v. Olano*, 507 U.S. 725, 733 (1993) (noting that a waiver involves the intentional relinquishment of a known right); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (noting that, in order for a waiver to be valid, the party who "waives" must have some degree of personal awareness of what is being relinquished, and the relinquishment must be a matter of personal choice). In reaching this conclusion, we emphasize that this case is

8

distinguishable from *United States v. Green*, 405 F.3d 1180 (10th Cir. 2005), and *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004), where we held that the decisions in *Booker* and *Blakely* did not render unknowing or involuntary the defendants' prior voluntary waivers of their appellate rights. More specifically, defendant Bass simply failed to object to a factual allegation in a presentence report, whereas the defendants in *Green* and *Hahn*, as part of their respective plea agreements, signaled their intent generally to waive their constitutional rights, including the right to appeal their sentences.

Id.

For the aforementioned reasons, it is my view that other than the fact of a prior conviction, a defendant's (and surely a defense counsel's) admission of facts outside the guilty plea context or outside the context of a formal stipulation cannot function as a waiver of his Sixth Amendment rights and does not permit an increase in the relevant statutory maximum sentence within the meaning of *Booker*. The Supreme Court said as much in both *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 124 S. Ct. 2531 (2004):

> . . . nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either *stipulates to the relevant facts* or *consents to judicial factfinding*. *See Apprendi*, 530 U.S. at 488; *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968). *If appropriate waivers are procured*, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may *consent* to judicial factfinding as to sentence enhancements.

*Blakely*, 124 S. Ct. at 2541. Indeed, in explaining its decision in

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which excepts prior

convictions from the rule of *Apprendi*, the Court stated:

9

> Because Almendarez-Torres had *admitted* the three earlier convictions for aggravated felonies – *all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own* – no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court.

*Apprendi*, 530 U.S. at 488 (emphasis in original).

The Court has made it clear that a defendant's simple admissions proffered in the absence of "proceedings with substantial procedural safeguards" may constitute evidence, even overwhelming evidence, in support of a sentencing enhancement, but they do not constitute an "admission" for *Booker* purposes. Where a defendant suffers a Sixth Amendment error but he has admitted facts that overwhelmingly support a particular enhancement, he will surely lose under the fourth prong of our traditional plain error analysis. *United States v. Cotton*, 535 U.S. 625, 634 (2002) (suggesting that correcting plain error when confronted with overwhelming evidence of guilt would harm rather than further fairness and integrity of judicial system); *see also Dowlin*, 408 F.3d at 672 (declining to correct Sixth Amendment *Booker* error under fourth prong of plain error analysis where defendant did not object to facts on which her sentence was enhanced, record contained ample evidence supporting sentence imposed, and she did not identify mitigating evidence district court did not consider at sentencing which might justify lower sentence). In my judgment, however, there is no reason to hold a defendant has waived his constitutional rights by admitting, outside the

10

context of a formal guilty plea, sentencing facts that were required only to be proved by a preponderance of the evidence, facts we now know constitute elements of the crime which will increase the relevant statutory maximum sentence and must therefore be proved beyond a reasonable doubt. This is even more the case where, as here, it was defense counsel's admissions that triggered the enhancement.

As previously noted, because Mr. Buonocore did not raise his Sixth Amendment argument in the district court, I would review his claim for plain error. FED. R. CRIM. P. 52(b); *see also United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005). To establish plain error, Mr. Buonocore must demonstrate there was (1) error (2) that is plain and (3) that affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). If he satisfies his burden of establishing the first three prongs of the plain error test, we may exercise our discretion to correct the error if it "seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)); *Gonzalez-Huerta*, 403 F.3d at 732. We conduct plain error analysis "less rigidly when reviewing a potential constitutional error." *Dazey*, 403 F.3d at 1174 (quoting *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001)).

It is well established that constitutional *Booker* error satisfies the first two criteria for plain error review. I turn, then, to the third and fourth. An error that violates a defendant's substantial rights "must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). Mr. Buonocore bears the burden of establishing prejudice because he failed to raise the issue below. *Gonzalez-Huerta*, 403 F.3d at 733. He must show "a reasonable probability that, but for [the error], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 124 S. Ct. 2333, 2339 (2004).

In a case involving constitutional Booker error, we have held that a defendant may satisfy his burden under the third prong in at least two ways:

> First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights . . . . Second, a defendant may show that the district court's error affected his substantial rights by demonstrating a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guideline range.

*Dazey*, 403 F.3d at 1175 (footnote omitted). Before the district court, Mr. Buonocore did not introduce any affirmative evidence which would have supported either of these contentions. Indeed, at sentencing, his predominant argument was that the district court should only base his sentence on the amount

12

of controlled substances already included in the presentence report's calculations. Defense counsel stated, "I still believe that the calculations in the guidelines provided by the probation department are in fact correct, and we object to any attempt to include [other] amounts . . . ." Aple. Supp. App. at 6. He further conceded that "the presentence preparers are exactly correct. [Defendant] ought to be punished for that which he did. He's been convicted of it." *Id*. at 12. I see nothing to indicate a jury would not have found the drug quantity beyond a reasonable doubt. In addition, Mr. Buonocore points to nothing in the record indicating that the district court would reasonably impose a sentence outside the guideline range. I therefore conclude that judicial fact-finding of the precursor quantities did not affect Mr. Buonocore's substantial rights under the third prong of the plain error test.

Even assuming Mr. Buonocore could show the sentencing error affected his substantial rights, he has not met his "burden of persuading us that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings," *United States v. Mozee*, 405 F.3d 1082, 1091 (10th Cir. 2005), thus failing to satisfy the fourth prong of plain error review. In the context of a constitutional *Booker* error, "the question before us is whether a reversal and remand for resentencing by the district court under a discretionary guidelines regime would advance the fairness, integrity, or public reputation of the courts."

13

*Id.* It cannot be said that sentencing a defendant in accordance with a guideline range he conceded was based on a properly calculated amount of pseudoephedrine and ephedrine would undermine the fairness, integrity or public reputation of the courts. Therefore, while I disagree with the majority's Sixth Amendment analysis, I would nevertheless affirm.